Next case for argument is Jepson v. Bank of New York. Mr. Kizer. Good morning, Your Honor. May it please the Court? I'm going to address three issues that are involved in this case. One is the issue of standing, second is the issue of a nonexistent entity, and third is the issue of the collection agency problem that exists in the case. Since standing was the first thing that knocked us out and got us into this court, I'm going to address that issue first. For purposes of standing, there has to be constitutional standing, which means that there's a clear, actual injury that has occurred and not something that's hypothetical. Prudential standing requires that the injury be specific to the person and that I'm not trying to bring somebody else's claim. I think in both of those issues, I have that. The issue of the injury comes from the fact that in a void transaction, somebody is trying to assert a right against my client to take his home away from him in a mortgage foreclosure. In addition to that injury, the person that is trying to assert that right has no motivation to try to settle the case for the fair market value of the property. The First District, the First Circuit in Massachusetts, I can't remember the exact site of the case, but I believe one of the parties is Culhane, in 2013 said that a person that has a mortgage being foreclosed and the house is going to be lost has a specific injury and the injury is to that person. And so they have standing then to assert their rights under an agreement that they're not assigning party to. In this case, we have a pooling and servicing agreement that was put together, which really, for all practical purposes, in a traditional mortgage, you have a mortgagor and a mortgagee. The mortgagee provides the money, the mortgagor promises to pay and gets the money. You have the same situation here with this in that the two parties that are actually the real parties in the transaction are not signers to this pooling and servicing agreement. This pooling and servicing agreement was set up specifically to allow the banks, one, to get additional cash from outside parties so that they could loan to borrowers and at the same time minimize the risk that they have because as soon as this money comes in and the trust pays out, the bank, their risk is gone. They've gotten all their money back. Now we just have the certificate holders, which take the place of what the original mortgage lender would be, and we have the other party here as the borrower. In this case, the pooling and servicing agreement specifically states that the transaction has to have all the documents in it when it closes and they have to be endorsed in a specific way. The reason for that is that in a REMIC trust, in order to get investors to invest their money into the trust, they have to know a couple things. One is that it's going to comply with the New York trust laws. Two is going to be the fact that it's not going to be subject to a bankruptcy that would allow their protection, their secured assets to be taken away from them. And third, that the tax ramifications are going to be that the trust will not be taxed, that it's going to come out to them because their investment is based on the rate of return that they're going to get. And so they have to know that that's not going to be violated. The REMIC trust, the pooling and servicing agreement, specifically states that the trustee has no authority to change any of the terms of the trust. They have to live up to that trust and live up to those terms. The certificate holders cannot come and ratify an ultraviaries act by the trustee. A lot of the cases that have been cited... The Second Circuit and we and the New York courts have all said that they can, right? Yes, that's true. But the cases that were cited and looked at for the most part, Your Honor, are cases wherein fiduciary trusts were the background of the case law. And which in the fiduciary situation, the beneficiaries have an opportunity to ratify the trust to correct the errors that the trustee makes. In this trust, we don't have that. If the trustee tries to do something in violation of the trust, he destroys the REMIC status. It becomes a taxable issue. Could you present your argument? Could you make it simple? I don't really understand what you're saying. What do you want? What is the deal? I want to deal with the actual... Okay, so what exactly do you feel your client was deprived of? He's deprived of dealing with the actual party in interest for his mortgage. We have a mortgage that's been signed over to a non-existent entity. We have a document that's void on its face. A non-existent entity is what? American Wholesales Lender. American Wholesales Lender in the mortgage is defined as American Wholesales Lender, a New York corporation. There is no such entity. So now we have a non-existent party. The documents are void because we have a non-existent party. So you want the mortgage voided. I want the mortgage voided. Secondly... Not rescinded. Not rescinded, voided. So he keeps the money. He keeps the property. He keeps the property, that's correct. He keeps the property. Ms. Jepson keeps the property. Yes. We'll pay the money to whoever the real party in interest is. We don't know who that is. From the documents, you can't tell that. First of all, the documents never got into the trust because the trust requires that all intervening endorsements go into the trust. And there's a specific endorsement that has to be placed on the mortgage and the note in order to get in the trust. We don't have that. Mr. Kaiser, can I ask you, you know, with the securitization of mortgages and the role that they played in the economic collapse of 2008, and with certainly plenty of case law and newspaper articles indicating sloppy paperwork involving the management of these trusts, can you point us to documented instances in which the wrong party actually succeeded in foreclosing and borrowers were forced to pay twice? I don't know that the borrower necessarily would be forced to pay twice, Your Honor. But I do know that parties, in this case, the party that's standing before you trying to foreclose its mortgage is not the party. That's not my question. They've got a trail of assignments that leads to them, as the district court found. But I'm wondering if there are any reliably documented instances where this homeowner's nightmare has actually come to pass, where the wrong party has succeeded in foreclosing and collecting on the mortgage. Well, I know in Florida in the Nash case, Your Honor, the court stopped that from occurring. It said that America's wholesale lender is not an entity that exists. Any others? I can't recall off the top of my head, Your Honor. Do you think you owe money to anybody, or what? I don't think my client is denying that money isn't owed to somebody, Your Honor. The question is, who is it owned to? What do you care? I don't understand. She owes money, and through this chain of assignments, it ends up with the Bank of New York. So what's the issue? I don't get it. You just want to pay the same amount of money to someone else for some reason? And negotiate. Why would that? I'll explain that. First of all, the assignments aren't valid assignments, as you see, transferring and negotiating. But you acknowledge you have to pay this money, this note. You have to pay off the note. Why do you care to whom the note is to whom you pay? What, the $367,000 or whatever it is? The crux of the problem here, Your Honor, is because the pooling and servicing agreement, we've been told while a normal lender, a lender that's not subject to this, not this trust, a normal lender would sit down and say, what am I going to get in the way of money if I foreclose on the property? The property is worth less than the mortgage is. So they would sit down with a lender and say, I can go to sale and get $200,000 for a $400,000 mortgage, or I can sit down with you and negotiate something that allows you to keep the house and pay for that mortgage over time and I get the same return, maybe a better return because of the interest. Well, why does it matter who is holding the note? If you can get more money from not enforcing the note or making a deal with the mortgagee, mortgagor, I mean, then why does it matter whether it's the Bank of New York or anybody else? Because we have attempted to negotiate in settling this case with the lender, which is the trust, and the trust has said, my trust agreement specifically says that I cannot do that, and so they will not sit down and negotiate. They want the property, period. Now, if they are not the true owner of that note and mortgage, then I can sit down with the true owner and try to effect a negotiation. I would think that a prudent businessman would want to make as much money as possible out of the transaction in the situation it is, so there would be room for negotiation. Why isn't that true with the Bank of New York? They can't. Because of the pooling and servicing agreement, they're saying they cannot do it. That's the problem. They want the property. Let's remember the base. Are they a party? What's this servicing agreement? The pooling and servicing agreement is the document that creates the trust within which all of these mortgages are transferred and become the securitization for the certificate holders that have placed money into the trust to buy these mortgages. Those are the funds that are used then to fund the loans that the borrower gets. If that transaction is void on its face, it never went into the trust, and therefore there's some other party out there that my client should be dealing with and should be paying and not the trust. If it's void, it's void for all time, forever. The question isn't a matter of it being voidable because the beneficiaries can ratify it. The trust within its language in itself says it can't be changed by the trustee or anybody, plus the fact is you've probably got 10,000 beneficiaries out there. The likelihood of getting all of them to ratify an ultra-valuaries act of the trustee is probably impossible. In addition to that, their ratification would destroy the trust and the tax benefits would be lost. They'd now be taxed on all the money that they do receive, and the potential existed then for a bankruptcy to have stepped in and taken those assets away from them so they would get nothing through the bankruptcy. So it's important. Who is the actual owner of the Knowton mortgage? As I indicated earlier, I think you're asking us to disagree with the Second Circuit in Raj Amin against Deutsche Bank with our earlier decision this year in CoCroft and with a number of New York state court decisions applying this statute in such a way as to say these PSA provisions are only that a violation is only avoidable. But I guess explain to me how the borrowers here are intended third-party beneficiaries of those provisions designed to protect the investors. Your Honor, the whole idea of setting up the Remick Trust is to create an avenue to get funds available to loan out. I understand that. Counsel, the remedy you're seeking here is obviously at the expense of the investors, yet you claim to be representing their interests as a third-party beneficiary. That's what has me a little confused. I'm trying to, Your Honor, get to the point where my client is actually dealing with the real owner of the Knowton mortgage. First of all, the assignments have to be void because this is not a note payable to bearer. It's a note payable to a specific party, a specific party being a non-existent entity. So there can't be an endorsement that goes to somebody else. The endorsement that shows up on the note, and I'd like to bring it to your attention, that endorsement didn't show up until four years later on a note at the bottom of the note. The notes that are originally attached to the complaint say specifically in the complaint that these are true and accurate documents. There's no endorsement on that at all. Four years later, for the first time, an endorsement shows up on the front page of the note. It's not like there was an allonge that came detached and existed at the time. It's not like it was put on the back of the page and somebody forgot to copy it. This is on the face of the signature page. So that endorsement's question was to whether that even existed. But the fact is that if we don't have all the intervening endorsements to get it into the trust and the trust specifically requires that it be endorsed in a specific way, then we don't have a trail that gets it into the trust. And the ramifications of that trust not taking documents correctly voids everything. They're not allowed to take an endorsement to bearer, a blank endorsement. They have to have a specific endorsement. That doesn't exist here. You're saying the Bank of New York couldn't receive a note, an assignment with a blank endorsement? Is that what you're saying? Well, if Bank of New York got that endorsement, then that's fine. We'll deal with Bank of New York. But we're not dealing with Bank of New York. We're dealing with Bank of New York trustee of this specific trust. That's a totally separate entity from the Bank of New York. And a note that's transferred in blank and Bank of New York… So you would be happy to deal with the Bank of New York? Yes, because they're not under this guideline that deals with the restrictions that they can't modify the loan. We would be happy to deal with them, Your Honor. Okay. Okay, why don't you reserve the rest of your time. Thank you. So, Mr. Bowman? Thank you, Your Honor. May it please the Court, my name is Rhys Bowman. I'm here on behalf of Defendant Appley, Bank of New York Mellon, as trustee. Now, there is no dispute in this case that the borrower entered into the loan agreement, that she signed the note in mortgage, that she received $336,000 pursuant to the loan agreement, that she is in default for failing to make a payment since 2008, and that Bank of New York, as trustee, currently has possession of the note. Now, essentially, what are the three issues before this court on appeal? Well, Mr. Kaiser says that the note is no good because it has a blank endorsement. Well, so I think he's saying that the note is no good because America's wholesale lender is the original payee of the note. And to make that argument, you're disregarding the Illinois UCC, and specifically Section 3-404, Subpart B, specifically permits, and America's wholesale lender is a DBA of Countrywide Home Loans Incorporated. What's a DBA? Doing Business As. So, Countrywide Home Loans called itself America's wholesale lender for the purposes of this note. And under the Illinois UCC at Section 3-404, Subpart B, a DBA as payee is permitted, and if that is the case, any person in possession of the instrument is its holder. So, the Illinois UCC specifically allows this fictitious or doing business as entity to be a payee on the note. Now, the note is endorsed from Countrywide Home Loans Incorporated, doing business as America's wholesale lender, to blank, making it bare paper. And it's bare paper because under the, I'm sorry, it's first a negotiable instrument. The note is under 3-104 of the Illinois UCC, and the appellate has no case law whatsoever to say that, to rebut the fact that this is a negotiable instrument. Now, how does the sinister MERS play into this? Well, MERS was acted as the nominee for America's wholesale lender, but for purposes of the, as the mortgagee. Now, the mortgage in this case, in Illinois, is incidental to the note, follows the note. So, as long as you have a note that's transferred, that mortgage will automatically be transferred with it. So, MERS doesn't play much of a role here. In going back to this issue of America's wholesale lender being allowable as a payee on the note, in the Illinois UCC, section 3-404, the committee comments specifically state that subsection B applies to any instrument. So, this doesn't just apply to checks. You could have a fictitious or a DBA entity sign B on a note as a payee and still make that note valid, and that's very clear in the Illinois UCC. Going on, the trust can enforce the note because it is the holder of this negotiable instrument that is endorsed in blank, meaning we don't even need to get to the issues of the PSA, the pooling and servicing agreement, because Bank of New York Mellon is the holder of this note that's endorsed in blank. But Mr. Kaiser suggests that Bank of New York can't negotiate with Jepson. And nowhere is that made clear in the record. This is just kind of an assertion of the appellant. Moreover, in Illinois state court, you have mandatory mediation programs. You have where the lender has to sit down with the mortgagor and mediate the issue. You have government programs such as the HAMP program that automatically provides, if certain requirements are met, a modification of the loan. So to say that Bank of New York Mellon is trustee cannot negotiate a settlement or cannot negotiate a loan modification or a consent foreclosure is just not correct, Your Honor. And it's nowhere evidenced in the record on this case. Mr. Bowman, can I ask you a question about the scope of the jurisdiction of the bankruptcy court and what we need to decide? I understand that we have before us, in essence, whether the bankruptcy court abused its discretion in modifying the stay under Section 362. If it did not, do we need to decide anything else or should we just let the state court decide these issues in the foreclosure action? Well, Your Honor, this also arises from the adversary proceeding of whether or not Bank of New York Mellon has any interest in the bankruptcy. Right, but if that's going to be litigated in the state courts, why does the bankruptcy court need to do it? Why do we want to have two courts dealing with the same issues here? I understand. And the issue was that Ms. Jepson was discharged. Her debt was discharged in the Chapter 7 bankruptcy. And I guess the issue would go to whether or not the debt could be discharged in the first place because whether or not Bank of New York Mellon is a creditor at all. But surely she's not challenging her own discharge. No, no. She's just challenging whether or not Bank of New York Mellon is a creditor. But if the only way the bank might get paid is by foreclosing on the mortgage through the proceeding that's going to go forward in state court. I understand. These are all state law issues. Foreclosure is something that generally state courts are a lot better at than federal courts. Right, and the fact that the stay was lifted resolves the issue of the mortgage, whether or not Bank of New York Mellon can move forward on the mortgage. Does the bankruptcy have any relevance to the current appeal? To the current appeal, only in the sense that the automatic stay was lifted in this adversary complaint. Disputing whether or not Bank of New York Mellon's trustee was a party in interest or was a creditor has standing to be a creditor. Has what? Has standing to be a creditor in the bankruptcy. So the bankruptcy court allowed Bank of New York to be a creditor, to be a party into the bankruptcy? Exactly. But it ended up with her being discharged? Yes. So Bank of New York Mellon was allowed to, as trustee, was allowed to proceed on the mortgage in the state court proceeding. So she doesn't have any. So the bankruptcy court didn't award her creditors any money, is that right? Did she have money and it was all taken away and then she's discharged? Exactly, yes, under the Chapter 7 bankruptcy. But she still has the, does she have any interest in the house or is that? Currently she's the owner. She is the owner. And in the lower. So now there's going to be a foreclosure proceeding in a state court where there is a proceeding now? There is a proceeding now that stayed pursuant to the bankruptcy court's order. The bankruptcy court stayed enforcement of that order. But she could make a deal with the Bank of New York? What's that? She could make a deal to award off the foreclosure? It's certainly in the realm of possibility. She's not, she has, it's not the case that she is unable to, if the property has the right amount of equity, if it has the right, if she meets certain guidelines, she can, for instance, get a HAMP loan modification. Or she can certainly work out a deal for a consent foreclosure or potentially a deed in lieu if there's not other liens on the property. So there are many ways to work out this loan. And the fact that it's a Bank of New York Mellonist trustee versus, let's say, a small community bank, that doesn't necessarily foreclose out her ability to settle. And it's a very speculative argument that she's making. It's not set forth in the record. Can I back you up for just a second? Yeah. Okay. The bankruptcy court modified the 362 stay to allow the foreclosure to go forward and then stayed that order? That's right. And that's now been stayed for how long? Since 2012, I believe. The foreclosure case, yes, I believe since 2012. Wow. Okay. So, again, because this note was endorsed in blank from Countrywide Home Loans, Doing Business as America's Wholesale Lender, two-bearer paper, Bank of New York Mellonist trustee, or counsel for Bank of New York Mellonist trustee, brought the note and mortgage in to the bankruptcy court and showed it had possession of the note. Now, under the Illinois UCC at Section 3-301, the holder of bearer paper can enforce the note, regardless of them being the owner. So even if this court were to disregard its prior rulings in CoCroft, disregard the New York State court rulings, and find that Bank of New York Mellon wasn't the owner, the fact that Bank of New York Mellonist trustee possesses the note shows that it can enforce that note. I think the last issue here is, and, of course, I don't think that there is any good basis to disregard the court's prior rulings in CoCroft, and it's clear that Ms. Jepson is not a direct beneficiary that has any grounds whatsoever to dispute this transfer of the note into the PSA. But, again, the fact that the Bank of New York Mellon is a holder of this bearer paper note makes it irrelevant. Going to the last issue of whether or not Bank of New York Mellonist trustee is an unlicensed debt collector under the Illinois Collection Agency Act, Section 2.03 is very clear, and it says, this act explicitly does not apply to banks, including trust departments, affiliates, and subsidiaries thereof. So the Illinois Collection Agency Act in no way would apply to Bank of New York Mellon, even in its capacity as a trustee. Moreover, Jepson's complaint relies on the incorrect allegation that the trust is a debt collector because it is collecting indebtedness on behalf of others. Again, the trust is the holder of the note and the owner of the note. Mr. Bowman, if I could ask you the flip side of the broader question here, for ordinary homeowners who saw the role that mortgage-backed securities played in the economic collapse of several years ago, we also see plenty of litigation that has shown sloppy paperwork in the assignments of these notes and mortgages. Could you just tell us more generally what assurances borrowers have that they are, in fact, paying the right party and can receive clear title when they pay off their notes? The answer to that is the Illinois UCC sets forth very strict rules on what must happen for a note to be endorsed. And you guys have the original note. Well, yes, but not only that. It's that the note was endorsed in blank, endorsed from an entity acting on behalf of the payee in blank as bare paper. So at that point, whoever holds that note, they get to enforce it, and it's the original note. It's not just a copy of the note, and that's what we presented. So there is no other entity that has that note but Bank of New York Mellon as trustee. Thank you. Okay. Thank you very much, Mr. Bowman. So, Mr. Keyes, does he have any time left? A minute? Okay. Again, Your Honor, quickly, the fact that the note was endorsed, nowhere in the documents does Countrywide's name show up any place other until four years later on in an endorsement their name is put on there. In order to get a document that's made payable to a specific party, the party signing that document has to endorse it to the next person. The next person then has to endorse it to the next person. There's a chain of title that goes through on the note. This trust agreement specifically requires those endorsements to be there. We do not have that here. All of a sudden, out of nowhere, four years later, we get an endorsement saying Countrywide is signing on behalf of wholesale lenders. That entity did not exist. It was intended by whoever set it up to be a corporation. It was never incorporated. That entity does not exist. It's a nonexistent entity. The document on its face is void. Well, he, Mr. Bowman, describes it as, you know, when he said DBA, it's just a name. It's not just a name, Your Honor. If it was just a name, it would have said wholesale lenders doing business as Countrywide. It would have said Countrywide would have been identified on the note. It also would have been identified in the mortgage. For whatever reason, Countrywide didn't do that. I don't know if it was done purposely to be deceptive or if it was just bad business practice or whatever it was, but it did not occur, and the mortgage says that it's a corporation, and we know that the corporation does not exist. So that document did not have the endorsements necessary to transfer it. Just the fact that it's sitting there within it, I could get a check from somebody or a note from somebody and say, Ken Kaiser, I'm endorsing it over to you. Are you going to be able to enforce that? My name doesn't appear any place, any place on the document. I'm endorsing for American wholesale lenders. If I go to a bank today with a check even from another party made payable to a specific person, they endorse it over to me, my bank will not accept that check unless that person is standing next to me Okay, thank you. Thank you so much, Mr. Kaiser. And thank you, Mr. Bowman.